CYPRIAN T. JENKINS, APPELLANT, VS. H. T. LYKES AND N. BARCO, APPELLEES.

1. Where a sale of timber is made and the contract in writing gives the purchaser "reasonable time to cut" it, parol testimony tending to show that "reasonable time" meant a stated time spoken of by the parties before signing the contract, is not admissible, as it would change the terms of the contract. What is reasonable time to cut the timber is a question of fact to be determined by the jury upon evidence on that subject.

2. When the Judge signing a bill of exceptions attests that a general exception was taken to the whole charge to the jury, and no specific exception was taken to any paragraph, the court on appeal will not notice errors in the charge not specifically excepted to, unless the charge is erroneous as a whole. Parties should point out to the Judge the portions excepted to before the jury leave the box.

3. A deed of land does not convey to the purchaser timber cut and lying on the ground.

4. A parol sale of standing trees, though void as a sale of an interest in land, operates as a license to enter and cut the trees, and until revoked such license will estop the seller from suing in trespass or trover. Timber so cut is the personal property of the party buying and cutting the trees.

5. A parol license to cut trees is revoked by a sale and conveyance of the land by the licensor to a third person.

6. When a purchaser of land sues one having a license from the former owner to cut trees for cutting and carrying away timber, he can recover only for such cutting and damage as was done to the realty after the delivery of the deed to the purchaser, and not for the value of timber previously cut but taken away after the deed.

7. A., acting with the consent of the owners of land, sold to J. the cedar standing or fallen to be cut on owners' land, and in his own name in writing agreed to "defend him in the same." Afterwards A. purchased the land. Such purchase did not terminate the license to cut the cedar growing out of the sale thereof, but was rather an affirmance and continuation of it.

8. The owner of land, though not in actual possession, may maintain trespass for an injury thereto against a wrong doer. A legal title draws after it a right of possession as against such trespasser.

9. Where, in an action of trespass to recover the value of timber cut and taken from land, the jury have, under erroneous instructions, given a much greater verdict than is warranted by the proofs, and the defendant appears to have suffered injustice thereby, the verdict should be set aside and a new trial granted.

Appeal from the Circuit Court for Hernando county. The facts of the case are stated in the opinion.

*James T. Magbee* for Appellant.

*John A. Henderson* for Appellees.

This was an action of trespass, brought by L. & B. vs. J. for cutting and removing certain red cedar logs of timber from the lands of L. & B. The pleas are : 1st, the general issue ; and 2d, that J. had a permit to cut the timber in question off the lands, given by one Atkinson, who subsequently conveyed the land to L. & B., to which plea there was a replication that when said permit was given the lands from which the cedar was cut belonged to the estate of one Ferguson, which estate was in process of settlement ; that the wife of Atkinson was one of the heirs of the estate of Ferguson ; that he was acting as an agent for the estate, but claimed no authority to sell the timber ; and that the permit was given with the understanding between J. and himself that the timber would be removed before the estate sale was had. In January following the sale was had, Atkinson became the purchaser of these lands and sold them to L. & B., giving a full and absolute title thereto. After the purchase, and after notice to J., the appellant cut and removed a quantity of the timber. The jury found for L. & B., and assessed the damages at $250 ; a motion

for a new trial was overruled and a judgment was entered. This appeal was taken therefrom.

The errors assigned are numerous, and will be treated collectively.

For the appellee the following points are made:

Atkinson's permit to Jenkins to cut timber from the lands of Ferguson, who avowed his want of authority, gave no rights to Jenkins. Russell vs. Myers, 32 Mich., 522.

It would not have protected him from a suit of trespass brought by the executors of Ferguson's estate. It expired, if it was good at any time, with the sale in January. A sale of standing timber is a sale of an interest in real estate. (6 Waite's Actions and Defences, p. 75.) A *bona fide* purchaser of lands, without notice of the previous sale of timber, has a right to bring trespass for any so cut. *Ibid.*

The ruling complained of in the first error assigned was the proper ruling.

The testimony of Atkinson as to what was " a reasonable time " in the language of the permit for cutting and removing the cedar trees was properly admitted. It did not alter or vary the terms of a written agreement—it simply explained an indefinite term.

It is true that the charge of the court confounded the terms " evidence " and " testimony," but it did not mislead the jury. The jury simply understood that they were the exclusive judges of the " facts." Their verdict shows that they were not misled. For this or any such error this court will not reverse the judgment if the verdict is sustained by the evidence. (Doggett vs. Willey, 6 Fla., 482; Milton vs. Blackshear, 8 Fla., 161.) The bill of exceptions indicates irregularity as to the manner of taking the exceptions, the recitals are inconsistent; at the end it would seem that the exception was taken then only, although several

are dovetailed through the record. The charge as a whole was the law of the case, and the verdict was a proper one. It is just such a verdict as would be given upon another trial, and where substantial justice has been done, the verdict ought not to be disturbed.

THE CHIEF-JUSTICE delivered the opinion of the court.

Likes and Barco brought an action of trespass against Jenkins, charging him with having, on the 19th October, 1878, and subsequently, entered upon the plaintiffs' premises and cut down a large number of red cedar trees there growing, and carrying away and converting them to his own use. A second count charges him with having unlawfully entered upon plaintiffs' land and carried away a large quantity of red cedar timber.

The defendant pleaded not guilty, and further, defendant pleads that he purchased the red cedar trees and timber, standing or fallen or merchantable, on the land on the eleventh day of July, 1877, from one M. Atkinson, and paid him for the same, as will appear by the following contract, dated July 11, 1877:

" This is to certify that I have sold to C. T. Jenkins, his heirs or assigns, all the cedar now standing or fallen or merchantable on the land known as the Wise Donation, as lots Nos. 1 and 2, in Section 5, Township 20, R. 17, S. and East, and will defend him in the same.

" The condition that the said C. T. Jenkins do give the sum of one hundred dollars in a promissory note made payable on or by the 1st of January, 1878, the said C. T. Jenkins to have reasonable time to cut the said red cedar. In testimony whereof I have hereunto set my hand and seal.

" M. ATKINSON. [L. S.]

" Witness—J. S. MILLER, W. F. GAINES."

This was duly acknowledged. The plaintiffs for replica-

tion to this plea admit that Atkinson did give defendant a permit to cut all the red cedar on said land, and that it was to be cut in a reasonable time, but they say that when the promissory note mentioned was paid on the first of January, 1878, the cedar contract between defendant and Atkinson was closed and the permit or bill of sale expired. Further, that the bill of sale or permit was not recorded before this suit was commenced; and that on the 19th October, 1878, Atkinson sold the land to the plaintiffs by deed duly executed and delivered.

Issue being joined a trial was had and a verdict rendered in favor of plaintiffs for $250 damages. A motion for a new trial was made and denied and judgment entered, from which the defendant appeals.

The plaintiffs introduced as evidence of their title a deed executed by M. Atkinson and wife to them dated October 19th, 1878, acknowledged December 7, 1878.

Mr. Lykes testified that in the last of May, 1879, he notified defendant that plaintiffs had bought the land and the time they had bought it, and forbade his cutting or removing any more cedar. Defendant at that time admitted that he had cut about forty logs since plaintiffs had bought the land. Don't know whether the forty logs had been removed. The average measurement of logs was five to seven cubic feet each, according to witness' experience and observation. Defendant said he had a bill of sale of the timber and considered it his own; he did not say anything about the quantity of cedar in the forty logs. The price of red cedar at that time cut and delivered in market was fifty to sixty cents per cubic foot.

The above was the only conversation with defendant on the subject of the timber cut off the land.

Mr. Barco testified that in the summer of 1879 defendant in conversation told him he had cut cedar on the land and

he had permission from Mr. Atkinson to do so. He testified also to facts derived from defendant's letters which were not produced, but this was ruled out by the court.

Jenkins (defendant) sworn and examined in behalf of plaintiffs testified that he had cut cedar on the land in question. Had cut 100 sticks in all since October 19, 1878, to 30th October, 1879. Had cut and removed 325 sticks averaging three and a half feet cubic measure to the stick, worth 45 cents per cubic foot. This does not include 60 sticks now in the water cut in 1879 before October. They will average two or two and a half feet to the stick. First knew that Lykes & Barco owned the land in May, 1879. Don't think any more was cut after that. The hands were moving the cedar from the land when he received this notice, and they had finished when I arrived there two or three days after this notice. Sold the 325 sticks at 45 cents per cubic foot after cutting, hewing and hauling out of the swamp to the place of shipping. Built a causeway at a cost of about $150 to make a road to get out the timber. Paid Mr. Dyas 15 cents per foot for getting out the timber and delivering it on the bank of the river by contract. Gave a note for the $100 and paid it before it was due to Mr. Atkinson. Understood when I bought the cedar the land belonged to the estate of Neil Ferguson, of whom Mr. Atkinson was a son-in-law and agent, and after making the contract Atkinson bought the land " at a sale of the estate " of Ferguson.

The defendant then introduced the contract by which Atkinson sold him the cedar.

Plaintiffs then introduced Atkinson as a witness. He said that defendant made him an offer for the cedar, and after consulting with the Ferguson heirs, and they approved of it, and then the contract was made.

The witness here stated, (objection was here made by de-

fendant's counsel to any statement by the witness tending to vary the meaning of the written contract and the court overruled the objection, to which ruling defendants' counsel excepted,) " I said here, Colonel Jenkins I will not assume the responsibility of selling him the cedar, unless it was cut by the time of sale of the land for the estate, which time was then spoken of between us. This was what was meant by the provision of a reasonable time made in the written instrument, and I think Mr. Jenkins mentioned about the January following. Mr. Jenkins agreed to this proposition or I would not have signed it, the papers, meaning the permit, which I gave to Mr. Jenkins, and the note which he gave me were executed then and there. This was July 11, 1877. The lands were sold for the benefit of the estate of Neil Ferguson in a few months. I think the last of the year 1877. I purchased these lands at the sale. I informed Mr. Jenkins at the time he paid me the note of the sale of those lands, and that I had bought them. To the best of my recollection the note was not to be paid until the cedar was cut. The note was paid about maturity." Atkinson's wife was one of the heirs at law of the estate of Ferguson.

Some contradictory testimony was given by Atkinson and defendant relative to the understanding as to the time when the contract was to cease and defendant to stop cutting. Defendant stated that he wrote the contract and used the words " reasonable time " on account of high water, sickness, anything preventing, or misfortune. " All the timber on the land was cut in six or seven months immediately after the contract. Sickness and high water prevented my cutting it sooner. * * I got the timber off as quick as I possibly could under all the circumstances."

The foregoing abstract contains all the testimony materially affecting the case.

The first error assigned is that the court permitted testimony to be given by Mr. Barco as to the contents of letters said to have been written to him by defendant, and which letters were not produced nor their loss or destruction shown. While it appears that the witness did so testify, yet when it clearly appeared that some of his testimony related to the contents of the letters, the court ruled that so much of it should be stricken out as illegal. The court added, as appears by the bill of exceptions, that " that which he received verbally from the defendant as well as in writing be admitted as legal testimony." This is somewhat confused, but we do not understand that the Judge intended to say that so much of the oral testimony as purported to give the contents of letters should be received. He evidently intended to rule that oral admissions were proper testimony, and that the contents of letters were legal testimony when produced ; but he did rule that oral testimony of their contents was not legal evidence, and it could not have been understood that in the same breath he ruled the contrary. The whole matter was explained at the time, and we do not think any mistake was made by the jury on account of it.

The second point in the assignment of errors is that the court admitted the testimony of Atkinson to prove what the words " reasonable time to cut the red cedar timber " meant. It is a familiar and well settled rule that parol evidence is not admissible to vary or contradict the terms of a written instrument, and that a written contract, which is intelligible on its face, must control, the parties understanding fully what the contract contains. Testimony should not be admitted to prove that a contract, clearly expressed, means a different thing from that which is so expressed. When the witness was permitted to testify that a " reasonable time " meant that the time would ex-

pire when a sale of the land should be made or the note paid, it was allowing a contract to be proved other than that which was signed. A "reasonable time" to cut and take away the cedar means so much time as may be necessary, with ordinary diligence and considering the character and condition of the land and water, to accomplish the thing contemplated, and this was a question for the jury to determine upon evidence given on that subject. There was no testimony on that point except that given by the defendant, who said he got the timber off as quick as he possibly could under all circumstances. Sickness and high water prevented cutting it sooner. This was legitimate testimony, and that given by Mr. Atkinson was erroneously admitted.

The third, fourth, fifth and sixth alleged errors relate to the charge of the court to the jury. The Judge certifies that the several exceptions embodied in the bill of exceptions were not taken at the time the charge was delivered, but the exception was taken to the whole. The settled practice is that exceptions to the charge must be taken at the trial before the cause is submitted to the jury, and the specific portions of the charge excepted to must be then designated, so that if error is perceived it may be corrected before the jury leave the box. By omitting this the party is presumed to acquiesce. There being some sound propositions in it, a general exception to the whole will not avail. In this charge we find some perhaps erroneous instructions and some that are proper statements of the law, but the defendant permitted the whole to go to the jury without pointing out to the Judge those to which he objected.

This question has been very often ruled upon by this court, and we cannot now vary the rule, however erroneous

may have been some of the legal propositions contained in the charge.

After the conclusion of the general charge to the jury the plaintiffs' counsel submitted instructions in writing to be given to the jury, which were given as follows :

First. That a deed in fee simple to lands conveys all the interest and estate of the grantor therein and everything thereon at the time of making the deed not expressly reserved in the deed.

Second. That if, at the time defendant entered into the contract with Atkinson for the purchase of the cedar, Atkinson told the defendant that he was not the owner of the lands, and declined to enter into said contract unless the defendant would agree to cut and remove said cedar before the sale of the lands for the Ferguson estate, and that the defendant agreed thereto, and that this is what was meant by the terms reasonable time in the bill of sale or permit, that the defendant was bound by such agreement, and had no legal right to cut or remove any more of said cedar from said lands after he received notice of the sale without a further contract or permit from the purchaser.

Third. That if they believe from the evidence that at the time plaintiffs purchased said lands from Atkinson, the defendant's permit or authority to cut or remove cedar therefrom had expired, they should find a verdict for the plaintiffs for the net value of all the cedar which it has been proved to their satisfaction the defendant cut and removed therefrom after the purchase of said lands by the plaintiffs and before the commencement of this suit, and interest thereon from the commencement of this suit, even though the defendant had no notice of the purchase of the lands by the plaintiffs.

Counsel for defendant objected to these instructions being

given, and excepted to the ruling of the Judge in giving the same.

The first is objectionable in that it charges that everything on the land not expressly reserved in the deed passed to the grantees. This is clearly wrong. A deed of conveyance of land carries only the land and what is appurtenant to it, but it does not carry personal property at the time being upon it. This charge gave the jury to understand, as a rule of law, that trees and timber which had been felled by the defendant and fallen timber, all which had been purchased by the defendant from the plaintiffs' grantor before their title accrued, passed by the deed.

Standing trees may be the subject of a sale by parol so as to give the purchaser a license to go upon the land to cut them, (1 Lord Raymond, 182;) and when cut and left upon the land they become the personal property of their purchaser. Trees so cut and left upon the land do not pass with the land in consequence of their having been before that time attached to the soil, but remain subject to the legal rights of the actual owner like any other personal property. Yale vs. Seeley, 15 Vt., 221.

The same was held in Bennett vs. Scutt, 18 Barb. N. Y., 347; and in Pierrepont vs. Barnard, 2 Selden, 379, it was decided that a parol license to cut and carry away standing timber, when such license was executed before revocation, gave the licensee a *property in the timber*, and the owner of the land could not recover the same in trover. This is indorsed by the same Court of Appeals in Pratt vs. Ogden, 34 N. Y., 23; Claffin vs. Carpenter, 4 Metcalf, 583; Whitmarsh vs. Walker, 1 Met., 313; Nettleton vs. Sykes, 8 Met., 34; Wood vs. Manley, 11 Ad. & Ellis, 34.

The doctrine is that though the simple agreement for a sale of the trees is void as a contract for an interest in land, standing trees being of the realty, yet if executed by cut-

ting the trees, the timber is converted into personalty, and was sufficient to vest a title thereto in the party acting under the license, he having complied with the conditions under which the license was granted. This is the law as to such agreements by parol. In the case at bar the defendant purchased and paid for all the red cedar standing or fallen, and a contract authorizing him to *cut* the cedar within a reasonable time, and this agreement was under the seal of Atkinson and attested by witnesses. True, at the date of this contract Atkinson was acting only as the agent of the owners, but he contracted with their consent and received the purchase-money.

In January following he purchased the land at the "estate sale" and became the owner of it, and under his agreement with the defendant he was bound to "defend him in the same," *i. e.*, the title to the cedar standing or fallen and cut within a reasonable time. We have seen what is meant by a reasonable time, and we have here the evidence of the fact that the cedar was cut and carried away as fast as was practicable under the circumstances.

Atkinson was all this while standing by and never forbade the defendant, but permitted him to go on cutting and carrying off the timber he had sold.

Up to the time of the sale and conveyance by Atkinson to the plaintiffs, therefore, this defendant acted under an unrevoked license. Atkinson's testimony that he supposed defendant's contract was at an end and his license forfeited when he had bought the land from the executor or administrator of Ferguson's estate (and thus given better title to defendant), knowing that defendant was getting out cedar, and permitting it without a word of remonstrance, is entirely inconsistent with his own conduct. He had sold all the cedar standing or fallen; and all that was *cut* up to the time Atkinson sold to plaintiffs was the property of de-

fendant, and he had a right to take it away. The first proposition of the instructions was therefore error.

The second instruction embraced the proposition that the " reasonable time" expired when Atkinson became the owner of the land, and gave the jury to understand that defendant had no legal right to cut or remove any timber after notice of the sale by the Ferguson estate to Atkinson. The very contrary was the effect of Atkinson's purchase. It enured to the benefit of the defendant, and his title to the cedar, which up to that time rested in parol as to Ferguson's heirs who were the prior owners, and gave defendant title to all the timber cut or to be cut within a reasonable time, except as to the grantees of Atkinson.

The third instruction is erroneous in that it charged the jury that plaintiffs were entitled to recover the net value of all the cedar the defendant had removed from the land after plaintiffs' purchase. We have seen that defendant had title to all the standing or fallen cedar that had been cut up to the time of plaintiffs' purchase, and assuredly they cannot recover from him the value of timber belonging to himself, even if they could have an action of trespass to recover nominal damages for going on the land to get his timber. Yale vs. Seeley, 15 Vermont, 221 ; Bennett vs. Scutt, 18 Barb., 347 ; Purdy vs. Day, 6 N. H., 430.

The result is that the defendant's exceptions to all the instructions prayed by the plaintiffs and given by the court must be sustained.

Appellant in his argument insists that the action of trespass for an injury to the realty cannot be maintained by plaintiffs, because they were not in possession of the land at the time the alleged trespasses were committed. The authorities cited by counsel do not sustain this proposition. The cases referred to were those in which the defendants were rightfully in possession, and the plaintiffs were out of

possession. But the rule even in. these cases is not sustained by the courts generally. The settled rule is that plaintiffs must have the actual possession, or, what is deemed equivalent, a possession which the legal title draws after it. It would be a strange doctrine that the legal owner could not maintain trespass for an injury to his property by one who has no right to do the act complained of, but must resort to ejectment, for ejectment cannot be maintained against one who is a casual trespasser neither in possession nor claiming it.

But defendant's plea of not guilty is not a denial of the plaintiffs' possession or right of possession. C. C. Rule 74.

We have found that the contract of Atkinson was, when signed, not a valid contract for the sale of an interest in the land, yet that what was done under it was licensed by the agreement, and up to the time it was revoked all the cedar paid for and cut became the personal property of the defendant. We inquire then, when, according to the proofs in the record, was the right to cut the cedar revoked? In Eggleston vs. The N. Y. & H. R. R. Co., 35 Barb., 162, a parol license had been given by Eggleston, Sr., to defendant to build a railroad over his land. It was held that the license was revoked when the land was conveyed by the licenser to his son, the plaintiff. And ·the Supreme Court in Miller vs. The Auburn & S. B. R. Co., 6 Hill, 61, 64, says: " There is no book which teaches that before a license is revoked or has expired, though it be not executed, a man is liable to pay damages for availing himself of it. It is personal to himself, and if it regard land it is gone if the owner who gives the license transfer his title to another." See also Cook vs. Stearns, 11 Mass., 583 ; Sugden on Vendors, (*96) 7 Am. Ed., 106, *n* (1) ; 2 Am. Lead. Cas., 514, *et seq.*, notes to Prinse vs. Case.

According to the case made by the pleadings and proofs

in this record the defendant purchased and paid for all the red cedar " standing, fallen or merchantable " on the land, such timber to be " cut " within a reasonable time ; that reasonable time is a question of fact to be determined upon the evidence ; that Atkinson not having revoked the license to cut the cedar until he sold the land to the plaintiffs, up to which time defendant may have been engaged in cutting, all that was so cut was the property of the defendant ; that this personal property did not pass by the deed to the plaintiffs ; that the license to " *cut* " was revoked by the passing of the title to the plaintiffs by Atkinson's deed, and that the defendant is liable in this action for all damage resulting from the cutting of cedar after the delivery of the deed from Atkinson to the plaintiffs.

The defendant cannot be liable to these plaintiffs for any act of trespass committed prior to the delivery of the deed, but he is liable for the net value of all the cedar " cut " after the title to the land passed to the plaintiffs, and removed by him therefrom.

The defendant, as a witness called and examined on the part of plaintiffs, testified that he had cut one hundred sticks in all since the 19th October, 1878, (the date of the deed) and had removed all but sixty sticks then in the water. The measurement, according to this witness' testimony, of the 100 sticks, including the 60 not removed, was about 265 cubic feet. The average value of cedar delivered, as we find from the testimony of Lykes and the defendant, was about 50 cents per foot. From this must be deducted the expense of getting it out. It is very clear that the jury were misled by the instructions given, and gave a verdict for a very much larger amount than was warranted by any fair construction of the testimony. This not being a case of wilful and malicious injury to property, the measure of damages is the actual injury to the plaintiffs'

property by the cutting and carrying away of their trees and timber, no other injury or damages being claimed by the declaration or attempted to be proved. The damages found by the jury are excessive and not warranted by the law of the case.

The judgment is reversed and a new trial awarded.