## In re TRUSTEES OF VILLAGE OF WHITE PLAINS.

(Supreme Court, Appellate Division, Second Department. January 24, 1908.)

1. LICENSES—IN RESPECT OF REAL PROPERTY—REVOCATION.

A license given village trustees by a landowner to enter on his land for the purpose of making sewer improvements was revocable at the pleasure of the owner, and conferred no rights which could survive his revocation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Licenses, §§ 116–120.]

2. SAME—EFFECT OF CONVEYANCE BY OWNER.

A license given village trustees by a landowner to enter on his land for the purpose of making sewer improvements was revoked by a conveyance of the land.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Licenses, § 125.]

3. EMINENT DOMAIN—COMPENSATION—IMPROVEMENTS BY LICENSEES—RIGHTS OF GRANTEE OF LAND.

Where village trustees entered on land for the purpose of making sewer improvements under a license from the owner, who thereafter conveyed the land, the grantee was not entitled to have the improvements made by the trustees within the terms of the license considered in fixing his compensation in subsequent proceedings to condemn the land for sewer purposes.

4. LICENSES—IN RESPECT OF REAL PROPERTY—REVOCATION—NOTICE—REMOVAL OF IMPROVEMENTS.

Village trustees, entering on land under a license from the owner for the purpose of making sewer improvements, were entitled to notice of any revocation of the license by the owner and to a reasonable time thereafter to remove any of the structures erected by them under the license.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Licenses, § 123.]

5. EMINENT DOMAIN—COMPENSATION—IMPROVEMENTS BY LICENSEES—EFFECT OF
   REVOCATION OF LICENSE BY CONVEYANCE OF LAND—RIGHTS OF GRANTEE.
      Where village trustees entered on land for the purpose of making sewer
   improvements under a license from the owner, who thereafter revoked
   the license by conveying the property, the trustees, with respect to struc-
   tures subsequently erected on the land, which they did not seek to remove,
   but to maintain without any license or consent from the grantee, were to
   be regarded as trespassers, and the grantee was entitled, in proceedings
   to condemn the land for sewer purposes, to have considered in fixing his
   compensation the value of the land as enhanced by the improvements.
      [Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain,
   § 361½.]

6. LIS PENDENS—PROCEEDINGS IN WHICH AUTHORIZED—CONDEMNATION PRO-
   CEEDINGS—STATUTORY PROVISIONS.
      A lis pendens, filed in a proceeding begun February 28, 1890, under Laws
   1887, p. 819, c. 609, empowering village trustees to establish a permanent
   system of sewerage, and providing that the proceedings shall be under
   Laws 1850, p. 211, c. 140, and the acts amendatory thereof, was a nullity;
   no lis pendens being authorized under the statutes regulating the proceed-
   ing, and Code Civ. Proc. § 3384, providing that "this title ["Condemnation
   Law," which authorizes a lis pendens] shall take effect May 1, 1890, and
   shall not affect any proceeding previously commenced."
      Hooker, J., dissenting.

Appeal from Special Term, Westchester County.

Proceedings by the trustees of the village of White Plains to con-
demn land for sewerage purposes. From an order confirming the re-
port of the commissioners to appraise the compensation for land taken,
etc., Robert Caterson, the owner of the land, appeals. Order reversed,
and new appraisal ordered.

Argued before JENKS, HOOKER, RICH, MILLER, and GAY-
NOR, JJ.

Ralph E. Prime (Augustus C. Brown, on the brief), for appellant.
Henry R. Barrett, for respondent.

JENKS, J. This is an appeal by Caterson, the landowner in certain
condemnation proceedings, from an order of the Special Term confirm-
ing the report of the commissioners to ascertain and appraise the com-
pensation for land taken for public sewer purposes by the trustees of the
village of White Plains. Chapter 609, p. 819, of the Laws of 1887,
empowered the trustees to adopt and to establish a permanent system
of sewage and drainage. Section 4 thereof provided:

"Whenever it is necessary to construct or extend, or discharge said sewers,
or to do anything appurtenant thereto, either within or without said village,
said board shall have full power, and is hereby authorized to construct and ex-
tend the same through any real estate, and title thereto shall be acquired in
the same manner as provided in chapter one hundred and forty of the laws of
eighteen hundred and fifty and the several acts amendatory thereof."

The proceedings were begun by petition filed on February 28, 1890,
and commissioners were appointed on March 15, 1890. The lands in
question were of a parcel then owned by Findlay, who, however, con-
veyed the parcel in 1892 to Caterson. The original commissioners
died. It does not appear that any steps had been taken in the proceed-
ings until 1905, when an order of the Special Term was made which
vacated all previous orders appointing commissioners and appointed the

present commissioners, who alone sat, heard, and determined the compensation. It appeared on the hearing the said trustees were in possession of the land in question and were using disposal works set up thereon by them for the treatment and the care of the sewage of the village.

The question presented on this appeal is whether Caterson was entitled to have the commissioners, in ascertaining his compensation, take into consideration any improvements made by the trustees upon his land. The record clearly indicates that the commissioners did not consider them. There is evidence that some time in 1890 the trustees caused work to be done on the lands, which was thereafter torn down, the grade leveled, and reconstruction begun. Indeed, there is evidence that indicates that some of the original work was begun in 1888; and there is evidence that the trustees had thus entered upon the lands under a license from Findlay. Such a license was, however, revocable at the pleasure of the owner, and conferred no rights which could survive his revocation. Duryee v. Mayor, 96 N. Y. 477–478; White v. M. R. Co., 139 N. Y. 19, 34 N. E. 887. Such license was revoked by the conveyance of that owner to Caterson by the deed of 1892. Washburn on Easements and Servitudes (4th Ed.) p. 7; Eckerson v. Crippen, 110 N. Y. 585, 18 N. E. 443, 1 L. R. A. 487; Cahoon v. Bayaud, 123 N. Y. 298, 25 N. E. 376; Eggleston v. N. Y. & Harlem R. R. Co., 35 Barb. 162, cited in Olmsted v. Dennis, 77 N. Y. 378; Wilson v. St. Paul, Minneapolis & Manitoba Ry. Co., 41 Minn. 56, 42 N. W. 600, 4 L. R. A. 378.

So far as the improvements were made by the trustees within the terms of the license up to the time of the conveyance of the premises, I think that the present owner is not entitled to have them considered, inasmuch as the evidence does not show that such license was ever revoked by the then owner. There was, then, as to such improvements, a part performance of an oral agreement, and hence the matter was thus taken out of the statute of frauds. Lewis on Eminent Domain (2d Ed.) vol. 2, p. 715, and cases cited; Reeves on Real Property, p. 327, and cases cited. But a different question arises as to the improvements made by the trustees subsequent to the conveyance to Caterson. The question presented is as to improvements now retained upon the land. Caterson testifies that when he took possession of the property no work had been done on this plot where the disposal works now stood towards the erection of the disposal works that are there now. The trustees, entering originally under a license from Findlay, were entitled to notice of any revocation made by Findlay, and to a reasonable time thereafter to remove any of the structures set up by them under the license. Putnam v. State, 132 N. Y. 344, 30 N. E. 743; Wilson v. St. Paul, Minneapolis & Manitoba Ry. Co., supra; Arrington v. Larrabee, 10 Cush. (Mass.) 512. I think that upon the revocation worked by the conveyance the trustees would have had a reasonable time thereafter for such removal; but that right is not involved, for the question arises as to structures now maintained and worked thereon by the trustees.

While I think that, as between licensor and licensee, the licensee was entitled to notice of any revocation thereof by the licensor, I also think

that such rule does not apply to Caterson, a third party, when a revocation was worked by conveyance to him.  If notice was prerequisite to such revocation, then the conveyance alone did not work revocation, and, notwithstanding the conveyance, some legal rights of occupancy and continuance under the license (other than removal) remained in the trustees until notice of the revocation.  This doctrine would deny the proposition that conveyance ipso facto was revocation.  In Wallis v. Harrison, 3 Mees. & W. 538, the license was to make a main way, a byway, and certain cuts for railway purposes.  The point was made that the licensees could not be regarded as trespassers after a conveyance of the land without first giving the licensees notice of the conveyance.  The court, per Lord Abinger, C. B., said:

"I never heard it supposed that, if a man out of kindness to a neighbor allows him to pass over his land, the transferee of that land is bound to do so likewise.  But it is said that the defendant should have had notice of the transfer.  This is new law to me.  A person is bound to know who is the owner of the land upon which he does that which, prima facie, is a trespass.  Even if this were not so, I think the defendants ought, in excuse of their trespass, to have pleaded the fact that they had no notice of the transfer."

This question was also raised in Wilson v. St. Paul, Minneapolis & Manitoba Ry. Co., supra, where the court, per Gilfillan, C. J., held:

"It is probably true, in general, that the protection which the license affords the licensee in doing what it permits him to do continues until notice, so that he cannot be liable for acting under it until notice of revocation.  This, however, has been held not to be the rule upon a revocation by a grant to a third person.  Wallis v. Harrison, 4 Mees. & W. 538."

In Bunke v. N. Y. Telephone Co., 110 App. Div. 247, 97 N. Y. Supp. 66, affirmed 188 N. Y. 600, 81 N. E. 1161, the court say:

"And the conveyance of the premises by the licensor was a revocation thereof, of which the licensee must take notice.  Eckerson v. Crippen, 110 N. Y. 585, 18 N. E. 443, 1 L. R. A. 487; Winne v. Ulster Co. Savings Institution, 37 Hun, 349; Eggleston v. N. Y. & H. R. R. Co., 35 Barb. 162; Forbes v. Balenseifer, 74 Ill. 183; Estelle v. Peacock, 48 Mich. 469, 12 N. W. 659; Hodgkins v. Farrington, 150 Mass. 19, 22 N. E. 73, 5 L. R. A. 209, 15 Am. St. Rep. 168."

I think that, subsequent to the revocation by the conveyance, the trustees, with respect to any structures thereafter erected upon this land, which they did not seek to remove, but to maintain without any license or consent from Caterson, must be regarded as trespassers, so that Caterson had the right to invoke the rule of Village of St. Johnsville v. Smith, 184 N. Y. 341, 77 N. E. 617, 5 L. R. A. (N. S.) 922. "The measure of such compensation," says Willard Bartlett, J., for the court, "is neither the cost of the improvements, nor their value, or the value of their use to the village.  The true inquiry is, how much do the improvements placed upon the property enhance the value of the appellant's land?"  Caterson is not barred from his claim by any principle of estoppel.  Crosdale v. Lanigan, 129 N. Y. 604, 29 N. E. 824, 26 Am. St. Rep. 551; Duryee v. Mayor, supra; White v. M. R. Co., 139 N. Y. 19, 34 N. E. 887; Eggleston v. N. Y. & Harlem R. R. Co., 35 Barb. 162–172 et seq.; Ewing v. Rhea, 37 Or. 583, 62 Pac. 790, 52 L. R. A. 140, 82 Am. St. Rep. 783.

This proceeding, it is to be noted, was not governed by the present

condemnation law; for the statute expressly provides that the proceedings shall be under chapter 140, p. 211, of the Laws of 1850 and the amendments thereof (ut supra). Section 3384 of the Code of Civil Procedure provides:

"This title shall take effect May 1, 1890, and shall not affect any proceeding previously commenced."

This proceeding was begun on February 28, 1890. No lis pendens was authorized under the statutes regulating this proceeding, and any lis pendens, if filed, was but a nullity. Mills v. Bliss, 55 N. Y. 139–141.

I advise that the court order a new appraisal (section 18, c. 140, p. 219, of the Laws of 1850) before new commissioners. The question of costs should be reserved until the coming in of the second report. All concur, except HOOKER, J., who dissents.

---

## In re COLLYER.

(Supreme Court, Appellate Division, Second Department. January 24, 1908.)

1. EXECUTORS AND ADMINISTRATORS—EXECUTRIX OF AN ADMINISTRATOR—DUTY AS TO PROPERTY RECEIVED.

Where the executrix of a deceased administrator holds a 15 year old check made by her testator as administrator, she may be compelled to pay over to the proper claimant thereof, not merely the check, but the money it calls for, if she has so much of the assets of the estate administered by her testator, since the acceptance of the check only would discharge the executrix without assuring the payment of the money represented by it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 532.]

2. TENDER—MEDIUM OF TENDER—SUFFICIENCY.

The claimant's right to the money was not affected by the fact that the check was tendered in court, with a consent to adjournment until it was honored, and the tender was refused, since it was only an order for money, and was not legal tender.

3. EXECUTORS AND ADMINISTRATORS—REPRESENTATIVES OF DECEASED ADMINISTRATOR—LIABILITY FOR INTEREST.

Where an executrix holds a check made by her testator as administrator, she may be compelled to pay over any interest thereon which she actually received, or which she should have collected, but failed to collect.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 423, 424.]

4. SAME—EXECUTOR OF AN ADMINISTRATOR—RIGHT TO ADMINISTER ESTATE ADMINISTERED BY TESTATOR.

An executor may not administer and distribute the assets of an estate of which her testator was administrator.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 532.]

On rehearing. Former decision overruled, order below reversed, and matter remitted to surrogate.

For former decision, see 105 N. Y. Supp. 1111.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

David Eilau, for appellant.

Harvey De Baun, for respondent.