## JACOT et al. v. MARKS.

(Supreme Court, Appellate Division, First Department. January 5, 1900.)

1. DISMISSAL—COMPLAINT—AMENDMENT.

Where plaintiffs failed to serve an amended complaint for over a year, and used the pendency of the action to defeat affirmative relief for defendant in another case, an order denying defendant's motion to dismiss was erroneous, though defendant had filed a counterclaim.

2. APPEAL—DISCRETION OF COURT.

Discretion of court on motion to dismiss is reviewable on appeal.

Appeal from special term, New York county.

Action by Charles H. Jacot and another against William L. Marks. From an order of the supreme court, special term, denying a motion to dismiss the complaint (57 N. Y. Supp. 904), defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Edward Browne, for appellant.

G. H. Englehard, for respondents.

RUMSEY, J. The plaintiffs' delay in serving their amended complaint, and getting their case into a situation where it could be tried, was entirely inexcusable, and, if there ever was a case in which the complaint should be dismissed for such a delay, this was one. Not only did it appear without contradiction that they delayed to serve the amended complaint for over a year, so that it was not in the power of the defendant to proceed in the action, but they used the pendency of this action to defeat the defendant's efforts to obtain an affirmative judgment on his counterclaim in another court. The fact that the defendant had interposed a counterclaim affords no reason for denying this motion. Roy v. Thompson, 1 Duer, 636.

It is quite true that upon the motion the defendant could only obtain a dismissal of the complaint, and could not recover any affirmative relief, but he was not barred from having that relief because he sought affirmative relief in the action.

It is also true that the disposition of such a motion is in the discretion of the court; but that discretion is reviewable upon appeal to this court, and, when it is evident that it has been abused, the complainant is entitled to his remedy.

The order denying the motion is therefore reversed, with $10 costs and disbursements, and the motion to dismiss the complaint is granted, with $10 costs. All concur.

---

## DAVENPORT et al. v. NEW JERSEY & N. Y. R. CO.

(Supreme Court, Appellate Division, Second Department. January 9, 1900.)

RAILROADS—COVENANTS RUNNING WITH THE LAND—EXECUTORY CONTRACTS.

An owner agreed to convey to a railroad the land occupied by its tracks, in consideration of its forever maintaining fences along its road. The fences were not built for 13 years, and meanwhile the owner had sold the land. No attempt to oust the company or to terminate the agreement

was made. *Held*, that the agreement was a covenant running with the land, and the company, on fulfilling its agreement, was entitled to a conveyance from the purchaser.

Appeal from trial term, Rockland county.

Action by Ada M. Davenport and others against the New Jersey & New York Railroad Company. From a judgment for defendant, plaintiffs appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

George R. Bristor, for appellants.
Henry Bacon, for respondent.

PER CURIAM.[1]  This action is in ejectment to recover a tract of land on which the defendant's railroad is built. In 1871 the Hackensack, etc., Railroad Company, the defendant's predecessor in title, entered into possession of the tract, and constructed its road, under an agreement made between it and Thomas Gotty, the plaintiffs' predecessor in title, and the then owner of the property, by which, in substance, the landowner agreed to convey and give a deed of the property, and the railroad company agreed to erect and forever maintain fences along the line of the road. The exact form of this agreement may be found in Helmke against this defendant (Sup.; 21 N. Y. Supp. 345), and Moxley against the same (Id. 347). Neither the Hackensack Company nor this defendant fulfilled its agreement until 1884, at which time it erected proper fences, and has ever since maintained them. In 1875 Gotty conveyed his whole farm, including the tract in controversy, to one Adelaide Winant, who, in 1884, conveyed the same premises to Robert Hamilton. Hamilton, in 1884, conveyed the farm, excepting and reserving therefrom the land occupied by the defendant. Hamilton died intestate in 1894, leaving the plaintiffs his heirs at law. The contention for the plaintiffs is that the instrument under which the Hackensack, etc., Railroad Company entered is not a present deed, but only an executory agreement for a subsequent conveyance; that by the default of that company in erecting the fences it forfeited its interest under the agreement; that from the time of such default the vendor might treat it simply as a tenant at will; that by the conveyance from Gotty to Winant, in 1875, of the whole farm, including the part on which the defendant's tracks were laid, Gotty did, as a matter of law, terminate the railroad company's tenancy, and from that time the latter lost all interest in the land, either legal or equitable. We will assume the agreement to have the legal character contended for. We may also concede that on the railroad company's default the vendor might have forfeited the contract, and ejected the company, though it is equally clear that equity might, in a proper case, have relieved from that forfeiture. Pom. Eq. Jur. § 450 et seq. But the landowner might not wish to abrogate the contract. The contract in some respects was advantageous to him.

[1] This opinion was written by Mr. Justice CULLEN before his designation as an associate judge of the court of appeals, and is adopted by this court.

It required the company always to maintain fences along the railroad. The late general term of this department, in the two cases already cited, held that the covenant to maintain the fences ran with the land, and was enforceable against subsequent owners. At no time before the commencement of this action did the owners of the farm seek to oust the defendant or its predecessors, or to terminate the agreement. On the contrary, they seem to have acquiesced in the defendant's possession. The acts of the parties continued the agreement in force, and in 1884 the defendant completely performed the agreement on its part. This is not the case of an entry under a parol license, which may be revoked even when expenditures have been made on the faith of it, but that of an extension of the time of performance of a valid written agreement. The case of Eggleston v. Railroad Co., 35 Barb. 162, is distinguishable from this in that in that case the defense was based solely on the license and the expenditure made under it. Judge Emott points out that the question whether the instrument was a sufficient agreement to sell, or whether it could be enforced as such in equity, was not raised by the pleadings, and that, therefore, it was unnecessary to pass upon it. In that case, too, the plaintiff was to be paid a certain price per acre in the mortgage bonds of the company, which were never paid. Here the defendant has fully performed its agreement years before any attempt was made to abrogate it. We do not think it necessary to pursue this discussion at length, for we regard the matter in controversy here as settled by the opinions of Barnard, P. J., at general term, in the cases cited, which were affirmed in the court of appeals on those opinions. 143 N. Y. 648, 37 N. E. 824; 143 N. Y. 649, 37 N. E. 824. Those actions were in ejectment, but the defendant was allowed a specific performance of the contracts of the landowners to sell on forthwith erecting the fences and paying the damages occasioned by its default in previously erecting them. The plaintiffs acquiesced in the judgment and the defendant alone appealed, complaining of the conditions imposed for a conveyance as excessive. But in the Moxley Case the plaintiff bought the land after default in the agreement, and it was there said by Judge Barnard:

"The plaintiff bought the land in question with full knowledge that the defendant was in possession. The covenant runs with the land. It is not only to build, but to maintain, the fence on each side of the track, that is secured by the contract. The land under the road of the defendant was sold to plaintiff, of course, subject to the performance of the original agreement to sell. The covenant to maintain a fence, even if it needs a new one, is an obligation which the defendant owes to Moxley."

We are of opinion, therefore, that when the defendant fulfilled its agreement in 1884 it became entitled to a conveyance of the land, and that the judgment of the special term directing such conveyance was correct.

The judgment appealed from should be affirmed, with costs.