THORKILD WILSON *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

June 10, 1889.

**License to Maintain Drain—Revocation without Notice.**—In the case of a drain maintained across land by mere parol license of the owner of the land, he may revoke the license, and proceed to use his land as though the drain were not there, without giving notice to the licensee.

Appeal by defendant from an order of the district court for Ramsey county, *Wilkin*, J., presiding, refusing a new trial after verdict of $2,900 for plaintiff.

*M. D. Grover*, for appellant.

*John W. Willis*, for respondent.

GILFILLAN, C. J.　Block 1, Hopkins' addition to St. Paul, is bounded by Third, Fourth, Rosabel, and Broadway streets, and the surface of the entire block was, at the time of the acts complained of, several feet below the surface of the surrounding streets.　The land was wet. On it were springs, the water from which seems, unless carried off by drains, to have spread over the surface of the block.　The plaintiff was in possession, under a lease from the owner, of the north half of lot 5, which extended from Rosabel street across the block to Broadway.　On the west end of the half-lot he had a building fronting on Rosabel street, and occupied by himself as a hotel; on the east end he had another building fronting on Broadway, and occupied by a tenant of his.　For the purpose of keeping the water drained off his premises he had constructed two drains,—one on the half-lot running east, and venting into the sewer under Broadway; the other running south, across that part of the block lying south of his half-lot, and venting into the sewer under Third street.　No serious question seems to be made of his right to have and maintain the former of these drains.　As to the other, it appears that, several years before the acts complained of, the then owner of the land across which it runs gave plaintiff oral permission (there being no consideration for the permission) to construct and maintain it.　Pursuant to such

permission he constructed the drain, and maintained it until the time of the acts complained of. After its construction the then owner of the land conveyed it to George C. Squires, and he conveyed it to defendant. Defendant also took a conveyance of plaintiff's half-lot, subject to his leasehold interest. In the fall of 1886 the defendant made preparations to erect a large building on the land thus acquired by it, and, as alleged by plaintiff, and as his evidence tended to prove, for that purpose it dug trenches, drove piles, destroyed the two drains, entered upon and injured plaintiff's half-lot. As a consequence of destroying the drains, the water accumulated during the following winter on plaintiff's premises, and seriously injured the building occupied by him, and prevented his beneficial use of it. The main item of damage was that alleged to have been caused by so destroying the drains and causing the water to accumulate. The evidence indicates that the accumulation of water was mainly due to the destruction of the drain venting into the Third-street sewer. Hence the question of what liability was incurred by defendant by destroying that drain is important.

The plaintiff constructed and maintained that drain under a mere oral license from the owner of the land. Such a license is revocable at any time. This proposition follows necessarily from the law that interests in real estate cannot be created by parol. Such a license gives the licensee no right to continue doing what he is thus licensed to do, though, until revoked, it protects him from liability for acts done under it. To the rule that a parol license to enter on real estate is revocable there are some exceptions, though this case does not come within them. They save the right to the licensee, not to occupy the land permanently, but to do some single act upon it; as, if one sell a chattel situate on land of the seller, the purchaser to take it away, there arises by implication a license to the purchaser to enter upon the land for the purpose of removing the chattel, and this cannot be revoked until he has had a reasonable opportunity to do so. And a license to place a building on land cannot be revoked so as to prevent the licensee removing the building within a reasonable time. Where a license is revocable, it is revoked by a conveyance of the land. *Harris* v. *Gillingham*, 6 N. H. 9, (23 Am. Dec. 701;) *Cook*

v. *Stearns*, 11 Mass. 533; *Bridges* v. *Purcell*, 1 Dev. & B. 492; *Foot*
v. *New Haven & Northampton Co.*, 23 Conn. 214; *Seidensparger* v.
*Spear*, 17 Me. 123, (35 Am. Dec. 234;) *Carter* v. *Harlan*, 6 Md. 20.
The license was therefore revoked by the conveyance of the original
licensor, and, unless it was renewed by acquiescence of the grantee in
the maintenance of the drain, it was entitled to cut no figure in the
case.

The court below, in its charge, treated the case as though the
license had not been revoked. It charged that the owner of the prop-
erty had the right to revoke it at any time, but qualified this with
this instruction, to which there was a proper exception : "But if this
drain was there upon the premises, had been there for years, and
this defendant, when it went to improve, found it there, it was its
duty either to give notice to the plaintiff that the license was revoked,
or to take reasonable and proper means to prevent any damages aris-
ing from what it did in reference to stopping it up." This instruc-
tion assumes that the existence of the drain on the defendant's land
by mere naked license created a right in the licensee, and a duty to
him on the part of defendant, that would prevent the latter using its
land as, but for the existence of the drain, it might have done, unless
it first gave notice of a revocation. Under the evidence in the case,
the jury must have understood this to mean express formal notice;
for there could be little doubt on the evidence that the plaintiff
had knowledge that the license had been revoked. Defendant had,
with his knowledge, commenced on its land work, the prosecution of
which necessarily prevented the continuance of the drain. It is prob-
ably true, in general, that the protection which the license affords
the licensee in doing what it permits him to do continues until notice,
so that he cannot be liable for acting under it until notice of revoca-
tion. This, however, has been held not to be the rule upon a revoca-
tion by a grant to a third person. *Wallis* v. *Harrison*, 4 Mees. & W.
538. We think the proposition in the charge is contrary to principle
and authority,—to principle because it attributes to a naked license
the quality of creating a right which cannot be created by parol.
Among the multitude of decisions on the subject of parol licenses we
find but two precisely analogous to this : *Hewlins* v. *Shippam*, 5

Barn. & C. 221, and *Fentiman* v. *Smith*, 4 East. 107. In the former case the defendant had given plaintiff license to maintain a drain across his premises, and had without notice obstructed the drain, so as to prevent the water flowing through it. The action was for damages caused by so doing, and it was held that plaintiff could not recover, for that a right in the land could not be created by parol. The other case was similar to it, and there was a similar decision. As there will have to be a new trial for the error in this instruction, it is not necessary to consider any of the other exceptions, further than to say we see no error in them.

Order reversed.