SCHULTZ *v.* HUFFMAN.

1. STATUTE OF FRAUDS—INTEREST IN LANDS—RIGHT OF DRAINAGE.
A right of drainage through the lands of another is such an interest in lands as cannot be created by parol.

2. SAME—PART PERFORMANCE—ACTION FOR PURCHASE PRICE.
Part performance of a parol contract for the sale of an interest in land will not enable the vendor to maintain an action for the purchase price.

Error to Calhoun; Smith, J. Submitted February 12, 1901. Decided July 2, 1901.

*Assumpsit* by William H. Schultz against Julius Huffman to recover the consideration for an alleged right of drainage. From a judgment for plaintiff, defendant brings error. Reversed.

*M. D. Weeks* and *Powers & Stine*, for appellant.

*Loud & Stewart*, for appellee.

MOORE, J.     This case was commenced in justice's court.   Defendant appeared on the return day, but not until a judgment had been rendered against him.   He appealed the case to the circuit court, where a verdict of $15.30 was rendered against him by a jury.   He has brought the case here by writ of error.

The declaration in justice's court was oral.   It is stated in the return of the justice as follows:

"The plaintiff declared verbally on common counts in *assumpsit*, especially on a certain (verbal) contract, according to which the said defendant promised and agreed to pay said plaintiff fifteen dollars for the privilege of draining certain lands of said defendant into and through a drain owned and constructed by said plaintiff."

The record discloses that Mr. Huffman was the owner of 80 acres of land, some of which needed to be drained. Mr. Muffley owned a farm south of Mr. Huffman.   Mr. Schultz's farm was south of Muffley's; and south or south and west of Mr. Schultz were the farms of Andrews, Hammond, Brownell, and Woodky.   The drainage of the farms of Huffman, Muffley, and Schultz would naturally be to the south or southwest, across the farms of the other gentlemen named.   It is claimed by Mr. Schultz that he made an arrangement with Mr. Huffman by which the latter became indebted to him in the sum of $15.   The material portions of his testimony are that about the 8th of April, 1896,—

"I went to Mr. Huffman, and asked if he wanted to go in with me and help buy a right of way, so as to connect with the parties south of me.   I mean by the 'right of way' to have a right to drain in their ditch, as they claimed it was their ditch.   I mean the right of way from Andrews' farm, and clear across, clear to the timber back.   I went to Mr. Huffman, and told him that I was about thinking of trying our ditch, to see if we could compromise the matter with the boys south of us, and get

an outlet for our water. I asked Mr. Huffman how much he would give me to get an outlet for his, and Mr. Hu ff man says, 'Well,' he says, 'I give $10.' 'Well,' I says, 'Mr. Huffman, that ain't hardly enough.' I says: 'These parties south of us wants quite a little. I think you ought to give me $15.' I says: 'There is quite a little expense. I don't know how much it will be; but,' I says, 'it is quite a little. I think it wouldn't be more than right if you gave us $15.' He talked. He said $10 was enough; but we talked a little while longer. Finally I says, 'Then you don't want to come in with us, and help us out, and come in with our ditch?' Well, yes, he said he should; and finally he says, 'I won't stand out for $5.' Then I says, 'Do I understand you, then, you will help me out with $15, providing I get an outlet with the boys south of us?' He says, 'Yes;' and that was all the talk he and I had."

Mr. Huffman says he had two cat-holes on his farm, and that he agreed with Mr. Schultz, if he would cause the ditch to be brought to the south line of his farm, he would pay $5 for each cat-hole drained into it,—$10 in all; and that the ditch was never dug to his south line. The plaintiff also claimed that, after the conversation had with Huffman, he did sufficient digging to give the defendant an outlet.

The record discloses that on the 13th of June the following article of agreement was made:

"Articles of agreement made and entered into this 13th day of June, A. D. 1896, by and between Fred Woodky, Job Brownell, Thomas Hammond, and Alan S. Andrews, of the township of Sheridan, in the county of Calhoun, and State of Michigan, parties of the first part, and William Schultz, William Muffley, and Joseph Grison, of the same place of residence, parties of the second part.

"*Whereas*, a ditch is now constructed and established from a point known as 'Beaver Dam,' and running from thence across the lands of said Fred Woodky and Job Brownell, and onto and ending on the lands of the said Alan Andrews; and *Whereas*, the parties of the second part are desirous of forming a connection with said established ditch for the purpose of draining over first parties' lands:

"*Now, therefore,* this indenture witnesseth: The said parties of the first part, for and in consideration of the sum of forty dollars, do hereby grant and give unto said parties of the second part, their heirs, representatives, and assigns, the right and privilege to dig and construct a proper ditch from the northern terminal of the present ditch hereinbefore first mentioned, and connecting therewith, and continuing on in a northerly direction, across the lands of the said Alan S. Andrews and William Schultz, to the north side of the section-line road running east and west between sections numbered 3 and 10 of said township of Sheridan, so as to make, when completed as herein set forth, one continuous ditch from said north line of said section-line road through to said so-called 'Beaver Dam.' And all the parties to this said contract to have the privilege of tiling said ditch through the land or lands owned by the parties so desiring with a suitable tile of suitable size for the purpose required.

"Said parties of the second part hereby agree to dig, construct, and complete said ditch from said northern terminal of said first-mentioned ditch to the north side of said section-line road at the expiration of ninety days from the date of these presents, and, in event of the failure so to do, to forfeit the said sum of forty dollars as stipulated damages for the nonfulfillment of contract."

No writing was ever given to the defendant by the plaintiff, or by any of the others, giving him the right to drain across their lands.

There are nearly 30 assignments of error, but, as one of them is decisive, the others will not be referred to further. The defendant asked the court to direct a verdict in his favor, because the contract, as sworn to by the plaintiff, was within the statute of frauds. The court declined to do this. Section 9509, 3 Comp. Laws, provides the manner in which estates or interests in lands may be acquired. In 6 Am. & Eng. Enc. Law, p. 18, it is said: "The right of drainage through the lands of another is an easement, requiring for its enjoyment an interest in such lands, and cannot be conferred except by deed or conveyance in writing;" and we understand that to be the rule. See *Hewlins* v. *Shippam,* 5 Barn. & C. 221; *Wilson* v. *Railway Co.,* 41 Minn. 56 (42 N. W. 600, 4 L. R. A. 378);

*Wiseman* v. *Lucksinger*, 84 N. Y. 31 (38 Am. Rep. 479).
It is said by counsel for plaintiff:

"However, if defendant's position that the agreement was for an interest in lands, contrary to section 9509 of the Compiled Laws of 1897, is sustained by all the testimony in the case, that would not entitle the defendant to a reversal, as it is now well settled that the performance or part performance of an oral agreement for such interest in lands as is described in said section will operate to take such agreement out of the operation of the statute of frauds;" citing a number of cases.

The trouble with this claim is that the wrong party is seeking the benefit of the rule of part performance. In this case Mr. Schultz cannot perform his agreement, so that it confers any legal right upon the defendant, without reducing the agreement to writing. He has not done that, and cannot claim any liability against Mr. Huffman because of the agreement. The court should have directed a verdict in favor of defendant.

Judgment is reversed.

The other Justices concurred.