## ANZONETTA J. JOHNSON v. ALVIN HEGLAND.[1]

November 30, 1928.

No. 26,927.

**Defendant not entitled to judgment notwithstanding verdict.**

1. Defendant was not entitled to judgment non obstante, not having moved for a directed verdict at the close of the testimony.

**When presumption of grant is rebuttable.**

2. Undisturbed use of a passway over the uninclosed lands of another raises a rebuttable presumption of a grant.

**Notice to landowner necessary to change permissive into hostile use.**

3. But the proof being that the use in its inception was permissive, such use is not transformed into adverse or hostile use until the owner of the land over which the passway runs has some notice of an intention of the user to assert a claim of right thereto adverse and hostile to the dominion of the owner of the land. The jury could find that the use in its inception was permissive, and that at no time did the user intend to use the passway under a claim of right or adverse or hostile to that of the owner.

**Defendant's use was not hostile to the landowner.**

4. The jury could also find that the use of the passway by defendant and his predecessor in interest subsequent to the death of the owner who granted the permission was not under claim of right or adverse to the owner.

Easements, 19 C. J. § 181 p. 960 n. 52; § 197 p. 964 n. 37, 39, 40.
Judgments, 33 C. J. § 114 p. 1186 n. 59.

See note in 1 A. L. R. 1368; 9 R. C. L. 781, et seq; 2 R. C. L. Supp. 875; 4 R. C. L. Supp. 626.

Defendant appealed from an order of the district court for Fillmore county, Peterson, J. denying his alternative motion for judgment notwithstanding a special verdict or a new trial. Affirmed.

*Hopp & Larson,* for appellant.

*David A. McVeety,* for respondent.

[1]Reported in 222 N. W. 272.

Holt, J.

The appeal is from the order denying defendant's motion in the alternative for judgment in his favor notwithstanding the special verdict or a new trial.

The action was for trespass in using a road or passway across plaintiff's land, tearing down her inclosure and thus letting her stock escape to their injury. Defendant denied the trespass and claimed a prescriptive right of way over the land. The jury answered in the negative this special issue submitted, without objection, under instructions concededly full and correct: "On April 1, 1924, did defendant, Alvin Hegland, then possess and own an easement to cross the Johnson land at the place referred to in the testimony in this case?" Plaintiff was awarded a small sum as damages, the right to which is not questioned. The appeal seeks only the claimed easement.

There was no motion at the close of the testimony for a directed verdict in regard to the issue of easement, and defendant may not now have judgment notwithstanding. Wilcox v. Wiggins, 166 Minn. 124, 207 N. W. 23. True, when plaintiff rested such motion was made, but upon a denial thereof defendant introduced his evidence, and the cause was submitted without the motion's being renewed. It is readily appreciated that often a plaintiff's cause is strengthened by the examination and cross-examination of the defendant's witnesses, and therefore it is advisable practice to follow the clear language of G. S. 1923, § 9495, and entertain a motion for judgment non obstante only when a motion for a directed verdict is made "at the close of the testimony." In this instance however no prejudice resulted to defendant from the failure so to move, for we reach the conclusion that the issue was for the jury.

Plaintiff owns two 40s of land in Fillmore county on the westerly line of which a public highway has existed since prior to the Civil war. Defendant's land adjoins plaintiff's on the east. Defendant has access to a public road which passes his premises on the south thereof, but in going to a small community towards the north it is more convenient to cross plaintiff's land. The fathers of the present

litigants acquired the respective lands about 1862. Plaintiff's father, Iver Thompson, died testate in 1893. Plaintiff was one of his devisees and has also acquired the interests of the other devisees in this 80 acres. Until 1915, the title of record to defendant's land was in George Hegland, his father, who acquired it in 1862 and continuously occupied it up to 1912, when he conveyed to defendant who took possession next year. Plaintiff's husband testified that during the latter part of Iver Thompson's lifetime George Hegland requested and was given permission by Thompson to use the road or passway; also that as late as 1911 George Hegland sought and obtained plaintiff's permission to continue in such use. This road has not been used or worked by the public. Plaintiff claimed it was used by her and her father to haul wood and timber from their land. It consists of wheel tracks passing through the timber. To the south of it is a steep hill, apparently too steep for cultivation. To the north the land is level and there is evidence that the wheel tracks have ·shifted somewhat as time passed and the clearing encroached from the north. Plaintiff's land was not fenced until about 1918. In 1920 the ·public road on the west side of her land was improved by cutting down the grade to the south, at which time she claims the authorities made an approach so that she could get to her timber; but defendant asserts this approach was for the use of his easement. Plaintiff placed a gate at this approach which was some rods away from where the wheel tracks of the claimed prescriptive way led out onto the highway. The evidence tends to show that the use of the passway was almost wholly confined to the occupants of defendant's land, outside of such use as plaintiff and her father made for getting out timber products from their land.

The chief contention of defendant is that even if the jury could find George Hegland's travel across Iver Thompson's land permissive in its inception the death of Thompson in 1893 revoked the license, and the subsequent continued use for 15 years gave a prescriptive right prior to 1911 when plaintiff's husband testified to George Hegland's then having asked for permission to use the way. True, a prescriptive way once acquired is not divested or destroyed

by the possessor thereof asking for and obtaining permission from the servient owner to use it. However the request by one who has been passing over another's land for 25 or 30 years for permission to continue so to pass is rather convincing proof that the right of passage always has been under license and rebuts the presumption of a grant. Tracy v. Atherton, 36 Vt. 503, 520, speaking of such evidence says: "Such subsequent application for license would be very powerful evidence to show that the previous use was not under a claim of right, so as to give a title  *  *  *." We think the jury were entitled to give great weight to George Hegland's request for permission, because prior to the time it was possible for anyone to claim a prescriptive passway over the locus in quo he was the owner and occupant of defendant's land and the user of the passway and knew whether he claimed it as a right and adversely to Iver Thompson or used or was using it by his permission. So also it must have been very convincing to the jury when this same George Hegland, after using the passway for nearly 50 years, still in 1911 asked for and obtained permission to use it, that such use never had been under claim of right or with an intention to claim adversely to the owner of the fee. The jury also had a right to take into consideration conditions existing in early days when fields only were inclosed and travel was free and permissive over prairies and timber lands. Such travel was with no intention to claim the trails as of right and adversely to the owners of the land. Iver Thompson made use of this passway to haul wood and poles from the timber through which it passed, and it would be but natural that he would permit his neighbor to share it with him.

But, as stated, it is claimed that Iver Thompson's death in 1893 terminated the permissive use, and the use thereafter ripened into a prescriptive right in 1908 which could not be divested by the mere application for and obtaining consent to its use in 1911 from plaintiff. The use, having been permissive in its inception and not under any claim or color of right, cannot become adverse or hostile until the intention so to use is conveyed to the owner of the servient estate. Omodt v. C. M. & St. P. Ry. Co. 106 Minn. 205, 118 N. W. 798; Jones, Easements, § 282. 19 C. J. p. 889, states:

"Nevertheless, to transform a permissive use into an adverse one there must be a distinct and positive assertion of a right hostile to the rights of the owner, and such assertion must be brought to his attention, and the use continued for the full prescriptive period under the assertion of right; and the rule is not affected by the fact that the privilege is claimed by successors in interest of the party to whom the permissive use was originally given."

Numerous authorities cited sustain the text. Among them is Baynard v. Every Evening Printing Co. 9 Del. Ch. 127, 77 A. 885, here in point, holding that where a user of a passway began its use by permission a subsequent conveyance of the servient land to a third person did not ipso facto render adverse the use previously permissive. See also Bennett v. Biddle, 140 Pa. 396, 21 A. 363; Id. 150 Pa. 420, 24 A. 738, on the proposition of law that a change of ownership of the servient estate does not as a matter of law transform a permissive use of a passway into adverse or hostile use. We think the jury had a right to find that so long as George Hegland was the owner and occupant of defendant's land and used this passway over plaintiff's land he never harbored the intention to use it as of right and adversely or in hostility to the owner of the land it crossed; hence the use never ripened into an easement by prescription.

The order is affirmed.