IN RE APPLICATION OF BOARD OF CHRISTIAN SERVICE TO REGISTER TITLE.
TRUSTEES OF SWEDISH EVANGELICAL LUTHERAN CHURCH OF VASA AND ANOTHER, RESPONDENTS.[1]

June 5, 1931.

No. 28,416.

■

[1]Reported in 237 N. W. 181.

486

*Erland Lind,* for appellant.
*Albert Mohn,* for respondents.

LORING, J.

On an application for registration a controversy arose over the title to ten acres of land which in 1872 was deeded by Swan Olson and wife to three named persons, "trustees of the Swedish Evangelical Lutheran Church of Vasa, Goodhue County, Minn. and their successors in office." At that time the Reverend E. Norelius

was pastor of the church, and he established an orphans' home upon these premises, which were in the vicinity of the church. Norelius never acquired any paper title to the premises in his own name, but in 1875, by a letter addressed to the Minnesota Lutheran Conference of the Augustana Synod of North America, of which the Vasa church was a member, he offered "to the Conference to take over the children's home, as it stands, as its own and to give it such development as would be desirable." The conference accepted the offer and organized a corporation under the name of the Society of Mercy of the Swedish Evangelical Lutheran Church of Minnesota to operate the home. The society took possession of the ten acres here in controversy and conducted the home until in 1926 and 1927 it deeded the premises to the applicant, which was a corporation likewise organized by the conference to take charge of all its charitable work. In 1926 the applicant ceased to conduct the home on the premises and transferred it to the vicinity of Red Wing. Thereupon the applicant sought registration of title to these premises and certain adjoining lands, and the Vasa church came in and disputed the title to the land covered by the deed from Olson. The trial court found in favor of the Vasa church, and the applicant has appealed.

The applicant contends that the deed from Olson to the trustees and their successors in office was in trust for Norelius and thereafter for the Society of Mercy and finally for the applicant.

■ We search the record in vain for evidence of such a trust. The trial court found against its existence and could not well have found otherwise. In order to upset the court's finding we should have to find the evidence conclusive in favor of the trust. We find no support for appellant's contention. Even if Norelius paid out of his own pocket the original $150 of purchase price, as appellant contends, he took the title in the trustees and their successors without qualification. No trust in favor of Norelius would arise. G. S. 1923 (2 Mason, 1927) § 8086. The other circumstances disclosed by the record are insufficient evidence of trust. They indicate permissive use but not a trust and are more fully discussed under the next question presented.

■ Applicant also contends that its predecessors in interest acquired a title by adverse possession. The trial court found against appellant on this contention, and we think rightly. The Vasa church was a member of the conference, and the Society of Mercy and the applicant were, on the record before us, mere instrumentalities of the conference to carry on a charitable work, in which the Vasa church was as much or more interested than any other member church. In a very definite sense the society and the applicant were performing a function for the Vasa church, and certainly no agent could under these circumstances acquire title by adverse possession against its principal. The trial court has found that the possession of the applicant and its predecessors was with the permission of the Vasa church, and we find no evidence whatever that it was hostile. Certainly in its inception the possession was permissive. To change such possession to adverse possession there must be some circumstances or open declaration of intent indicating an intent to claim the title in hostility to the true owner. We find no such circumstances or declaration until the removal of the home from these premises by the applicant in 1926. As well said by Mr. Justice Holt in Johnson v. Hegland, 175 Minn. 592, 596, 222 N. W. 272, 273, in quoting from 19 C. J. 889:

"Nevertheless, to transform a permissive use into an adverse one there must be a distinct and positive assertion of a right hostile to the rights of the owner, and such assertion must be brought to his attention, and the use continued for the full prescriptive period under the assertion of right; and the rule is not affected by the fact that the privilege is claimed by successors in interest of the party to whom the permissive use was originally given."

It is not to be overlooked that the relationship between these parties was very close and that they were co-operating in a common charitable purpose, in the success of which they were much interested and to which they were all devoted. Under such circumstances we think the trial court was amply justified in finding against an adverse possession. It would have been difficult to sustain a contrary finding. Omodt v. C. M. & St. P. Ry. Co. 106 Minn.

205, 118 N. W. 798; Collins v. Colleran, 86 Minn. 199, 204, 90 N. W. 364.

Appellant makes the point that a conversation had by one of the officers of the Society of Mercy with Norelius, now deceased, was improperly excluded. In the state of the record the conversation was not competent to bind the respondent, and consequently we find no error.

The order appealed from is affirmed.

HOLT, J. (dissenting).

I dissent.

I am persuaded from this record that Dr. Norelius and not the Vasa church owned the Vasa Orphanage when it was turned over to the Minnesota Conference of the Augustana Synod in 1876, although the legal title to the land, ten acres, was in the church. He personally undertook to shelter and provide a home for some destitute orphans he had found in St. Paul in 1864. The number who found their way to this home so increased that Dr. Norelius realized that private charity could not supply the growing needs of the home which he had originated and conducted. It appears that in 1872 Dr. Norelius had purchased these ten acres from one Olson for $150 and had erected a small house thereon, also a barn, and had procured a cow for the home when he made the offer to the conference to take over the institution as it stood. The deed from Olson ran to the trustees of the Vasa church; for what reason does not appear. Whether Dr. Norelius personally paid all of the $150 for this land or paid for the little house and barn and personal property of the orphanage, or whether money for this purpose was contributed by others charitably inclined, does not make any difference. Certain it is that Vasa church as such did not do so, for if it had its accounts and records would have disclosed it readily. However, it must be conceded that the legal title vested in the church even though the consideration came from Dr. Norelius or others.

But I confidently assert that the evidence shows that a hostile, open, notorious adverse possession began when the conference in

1876 accepted the offer of Dr. Norelius. The conference is composed of churches or congregations. Each church sends a lay delegate to the yearly or semi-yearly business meetings of the conference. Its pastor is ex officio also a delegate of his church to such meetings. When the conference accepted Dr. Norelius' offer of the orphanage, the Vasa church through its delegates renounced all title and claim thereto. The act negatives permissive use thereafter of either land or personal property. The conference when it accepted the offer at once elected a board to take charge of the orphanage and directed that board to incorporate. We find Dr. Norelius was one of the three elected on this board and also Mr. J. W. Peterson, who appears to have been a member of Vasa church and likely its delegate to the conference. When the needs of the orphanage called for additional land and buildings the conference raised and appropriated funds therefor. The land thus acquired around these ten acres constitutes about 200 acres in a compact body, and more than $25,000 has been expended on buildings and improvements upon the ten acres and upon the after-acquired land. No distinction was made between the ten acres and the other land when a new building was erected. Such building might be partly upon the ten acres and partly on the after-acquired land. The most expensive buildings are located upon the original ten acres. It cannot be that the conference expended these large amounts upon land which was held only permissively.

The record is clear that the church never interfered with the conduct of the orphanage. True, its members and others have at all times, and particularly when disaster overtook the orphanage, come to the rescue and so done in larger measure than members from the other and more remote churches of the conference. In fact the present officers of Vasa church, a younger generation, frankly admit that they had never heard of any claim made by the church to ownership of this land. And I am satisfied that no member of Vasa church of mature age when the conference accepted the offer of Dr. Norelius did ever afterward assert any claim hostile to that of the conference to this land. For over 50 years the conference,

by its incorporated agent, has been in open, notorious, exclusive, possession under claim of ownership, and the court should have so found.

I appreciate the resentment a church feels towards the conference when it moves from the territory of the church to another place an institution which it has liberally aided and in whose achievements it has a pardonable pride, because, forsooth, the conference sees some financial or other advantage in making a change of location. I was once a member of a church which felt sorely wronged by this conference removing from its boundaries an educational institution now of some note. But, apart from such resentment, I have no doubt that every member of Vasa church who considers the history of the orphanage and of the church must conclude that since 1876 the conference held open, notorious, exclusive possession of these ten acres adverse and hostile to any claim of interest or title thereto by the Vasa church.

STONE, J. (dissenting).

I concur in conclusion reached by Mr. Justice Holt.

