STATE, BY ATTORNEY GENERAL, v. MARTIN RILEY
AND OTHERS.
ELI OSTER KEARNEY v. C. F. McCARTHY.
STATE, BY J. A. A. BURNQUIST, ATTORNEY GENERAL,
INTERVENER.[1]

No. 33,170.

December 24, 1942.

[1]Reported in 7 N. W. (2d) 770.

See 208 Minn. 6, 293 N. W. 95.

A. M. Joyce and Todd, deLambert & Todd, for appellant.

Rietz & McBrien, for respondent C. F. McCarthy.

J. A. A. Burnquist, Attorney General, Arthur Christofferson, Deputy Attorney General, and Louis B. Brechet and F. J. McPartlin, Special Assistant Attorneys General, for intervener.

LORING, JUSTICE.

This is an appeal from an order denying the appellant's motion for amended findings of fact and conclusions of law or for a new trial. An order denying a motion for amended findings or conclusions is not appealable. The court's denial of such a motion amounts to findings to the contrary. Herman v. Kelehan, 212 Minn. 349, 3 N. W. (2d) 587; Smith v. Benefit Assn. of Ry. Employees, 187 Minn. 202, 244 N. W. 817. When such a motion is blended with a motion for a new trial and is denied as a whole, the order denying the new trial is appealable. This is another way of questioning the sufficiency of the evidence in support of the findings complained of. Sheffield v. Clifford, 186 Minn. 300, 243 N. W. 129. That is the challenge of the appellant in this case.

The principal question here involved is whether the evidence sustains the finding and conclusions that respondent McCarthy had acquired title to certain premises by adverse possession.

In 1938 the state commenced condemnation proceedings in Scott county in connection with a highway project. A small piece of land, on which was situated a house, located in the village of Savage, was involved in these proceedings, was condemned, and an

award of $4,800 made to the owner for damages. The money has been paid into court. This suit is to determine ownership. Kearney claims to be the record owner in fee, and McCarthy claims by right of adverse possession. The state has intervened, claiming that the original award was made on the theory that both house and lot were owned by a single owner and that, if this is not the fact, the state is entitled to a refund.

The issue between Kearney and McCarthy was first tried in 1939. The result there was to award Kearney $375 and McCarthy the balance. Then McCarthy removed the house, and Kearney obtained a new trial on the ground of additional evidence. The result of the second trial was an order substantially dividing the money, with $50 to the state. Both parties appealed from this second order to this court. The opinion is reported in State, by Attorney General, v. Riley, 208 Minn. 6, 293 N. W. 95. This court was then of the opinion that the award was excessive; that McCarthy was entitled to nothing, as it appeared that he owned only the house and had removed that; and that the Kearneys were not entitled to more than $375. Further, as the trial court had not stated the facts found and conclusions of law, a new trial was granted on all the issues. The result on this third trial was an order for judgment for McCarthy and a finding that he was the owner in fee of the disputed premises and entitled to the entire award of $4,750. Kearney appeals from the denial of his blended motion to amend the findings and conclusions or a new trial.

Prior to 1858 the claimant Kearney's grandfather owned all of what is now the village of Savage as part of his farm. In that year part of the farm was platted as the town of Hamilton (now Savage). The land in question is part of a larger square which was apparently considered a public square and on that account was not taxed. The village was a party to the condemnation proceedings but makes no claim to the award. In 1883 the land here in question, which is part of this larger square, was fenced off and the Chicago, St. Paul, Minneapolis & Omaha Railway Company built a house thereon for the use of its station agents at Savage.

The witness Kernan, by deposition, testified that he was present when the claimant Kearney's father and a representative of the railroad staked off this parcel of land in 1883 and that the understanding was that the railroad was to use the land under an oral lease. This testimony is uncontradicted.

From that time until 1925 the house and lot was occupied by station agents of the railroad, all of whom presumably paid rent to the railroad. The railroad company paid personal property taxes on the house. The claimant McCarthy was a station agent and occupied the house in 1920. In 1925 he purchased the house from the railroad for $425, and later that same year the railroad quitclaimed the lot to him by deed for $125. It was also in 1925 that the elder Kearney commenced a suit against the village of Savage to quiet title to the larger parcel of land known as the "public square," of which this smaller lot is a part. However, by stipulation between the parties, at the request of the railroad, this smaller parcel (known as 35a) was omitted from the proceedings. McCarthy continued to live in the house up to the time of the first trial, but paid only personal property taxes on the house and did not record his deed until 1938. In 1938 Kearney filed a quitclaim deed executed by his father in 1925 and is now the record owner of the land.

The trial court found that the claimant McCarthy was the owner of parcel 35a by virtue of the adverse possession of himself and his predecessors in interest. It is the contention of the appellant that the possession of the railroad company was permissive in its inception. If that be true, the rule is clear, as said by this court in Johnson v. Hegland, 175 Minn. 592, 596, 222 N. W. 272, 273:

"* * * to transform a permissive use into an adverse one there must be a distinct and positive assertion of a right hostile to the rights of the owner, and such assertion must be brought to his attention, and the use continued for the full prescriptive period under the assertion of right; and the rule is not affected by the

fact that the privilege is claimed by successors in interest of the party to whom the permissive use was originally given."

The principal question is, therefore: Was the inception of the railroad's possession permissive, and, if so, was it transformed to adverse possession which ran for the period of 15 years? When the inception of the possession is permissive and not hostile or under claim or color of right, it is presumed to so continue and does not ripen into title however long it may continue, unless circumstances or declarations indicate an intent hostile to the true owner. In re Application of Board of Christian Service to Register Title, 183 Minn. 485, 237 N. W. 181. The strictest proof of hostile inception of the possessor is required. Omodt v. C. M. & St. P. Ry. Co. 106 Minn. 205, 118 N. W. 798; Junes v. Junes, 158 Minn. 53, 196 N. W. 806. The only evidence in this case of the inception of the possession is the deposition of the witness Kernan, which clearly supports the contention that the railroad company entered upon the land under a license arrangement with the elder Kearney. There is no proof that the inception of the occupancy was under any other condition. A license could have been created by parol that would be revocable at the will of the owner. Minneapolis Western Ry. Co. v. M. & St. L. Ry. Co. 58 Minn. 128, 130, 59 N. W. 983.

The witness Frank F. Kernan, who is a man 75 years of age, testified by deposition that he was present in 1883, together with the elder Kearney and a man from the railroad, when parcel 35a was marked out separately from the rest of the "public square," and in fact that he drove the stakes to mark the place where the railroad built the house. He was 18 years old at the time. In regard to the agreement between the railroad and the elder Kearney, he testified:

"Q. What was the substance of any conversation you heard that day?

"A. I kind of remember that they wanted to purchase it; they wanted to buy it.

"Q. Who wanted to buy it?

"A. This road man, he wanted to buy it, was talking about it.

"Q. The railroad man wanted to buy it?

"A. Yes; and he refused that; he said that he did not want to sell it.

"Q. Who refused?

"A. My uncle refused.

"Q. Pete Kearney?

"A. Yes.

\* \* \* \* \* \*

"Q. What was the arrangement under which the railroad company was supposed to use this property?

"A. I do not know that exactly; only they were going to put a house on there.

"Q. Did Mr. Kearney give the railroad company the property?

"A. No, sir; he did not.

"Q. What did he say about that, if anything?

"A. He said that he did not want to sell it, because he might have use for it himself later on, and that he would not sell it.

"Q. But he agreed that they should use it until he wanted it?

"A. That is the idea."

The trial court apparently did not give this testimony any weight although it is the only evidence bearing upon the important question of the inception of the possession. In the light of this evidence, it cannot be said that the railroad's possession was "hostile" or "adverse." Our rule in regard to the effect which the trial court must give to uncontradicted testimony is clearly set forth in O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430. The court or jury cannot disregard positive testimony of an unimpeached witness unless its improbability or inconsistency appears from the record. There is nothing in this record to impeach the witness Kernan. Nor is the fact that the witness is related to one of the parties sufficient, in itself, to discredit him. Olsen v. Hoffmann, 175 Minn. 287, 221 N. W. 10; Weinstein v. Schwartz, 204 Minn. 189, 283 N. W. 127.

Although there is no testimony tending to show any circumstances or declarations sufficient to transform McCarthy's possession from permissive to adverse, we need not here consider whether it became adverse to the Kearneys in 1925, at which time McCarthy received a quitclaim deed from the railroad and the appellant obtained a similar instrument from his father. This action was commenced in 1938, and the statutory period of 15 years had not elapsed. Minn. St. 1941, § 541.02 (Mason St. 1927, § 9187).

In both of the previous trials of this case the court found that the fee was owned by Kearney, and in our opinion on the last appeal, reported in 208 Minn. 6, 8, 293 N. W. 95, 97, we said:

"On the present record and order, for plain reasons, it is impossible to justify any allowance to McCarthy. It is equally impossible to find that the Kearneys have good claim for more than $375. That is the value judicially placed on the land, which is the only property taken. To permit the claimants, or either of them, to take all the $4,750 would therefore be a gross miscarriage of justice."

There is no substantial change in the present record which would justify us in reaching a different conclusion. The deposition of Kernan introduced at this trial is the same that was taken for the previous trial and was introduced *in toto* by stipulation between the attorneys. It is supported by the fact that the railroad company considered the house it had erected as personal property and paid taxes on it as such until 1925, after which McCarthy paid personal property taxes on it until 1938, when these highway proceedings were commenced. He then had his quitclaim deed recorded and the property listed as real estate. The inference to be drawn from this fact alone is well-nigh compelling. With the deposition, reasonable men could not conclude that his possession was adverse, either in its inception or prior to 1925. In fact, we discover no evidence tending to transform the possession from permissive to adverse prior to 1938. As a village officer, McCarthy was a member of the board of tax review and

was well aware that his house was listed as personal property. He attached his signature to the tax lists.

The order of the trial court is reversed and remanded with direction to award $375 to the claimant Kearney and nothing to the claimant McCarthy. The state intervened, as suggested by this court in its previous opinion. It showed clearly that the award was made by the commissioners under a misapprehension that the house was part of the real estate and belonged to the owner thereof. The disparity between the award and the value of the property is so gross as to amount to a fraud upon the state and to justify the court's setting aside the award in excess of the amount indicated in our former opinion. The balance of the original award should be returned to the state of Minnesota.

So ordered.

UPON APPLICATION FOR REARGUMENT.

On February 11, 1943, the following opinion was filed:

LORING, JUSTICE.

Both claimants ask for a rehearing. McCarthy claims that the state, not having appealed, cannot be awarded any part of the fund. He is hardly in a position to urge that point since we find that the record precludes him from any claim to the fund. The money is the state's until one or the other claimant proves that he is entitled to it. Under the evidence, McCarthy owned only the house, which he has removed. He is not entitled to any of the fund now held in court.

Kearney contends that the case should be sent back for appraisers to be appointed to determine the actual value of the property taken. That cannot be done. The condemnation proceedings are closed, and this suit, although in form one to determine adverse claims to the land, developed by agreement into one to determine who is entitled to the fund in the custody of the court. There can be no doubt that the award was made under the mistaken view that both house and lot were real estate. Such

being the case, the court will award the fund only to those who show themselves entitled to it.

Kearney also claims that he is entitled to the entire award on the theory that the house became his by revocation of the license to McCarthy. The difficulty with that contention is that the record is barren of evidence that McCarthy knew of the deed to Kearney upon which revocation is based. Nor does the record show that Kearney notified McCarthy of his title or effected a revocation in any way. McCarthy was entitled to a reasonable time to remove the building after the revocation of the license. Wilson v. St. P. M. & M. Ry. Co. 41 Minn. 56, 42 N. W. 600, 4 L. R. A. 378. He could not well have a reasonable time to remove unless he knew of the revocation, and he was entitled to notice, actual or constructive. Dame v. Dame, 38 N. H. 429, 75 Am. D. 195.

It is true that Kearney's right to the fund depends on the value of the land taken and that there is no finding of value. Kearney offered no evidence of the value of the land. McCarthy testified that the value of the land was $125 to $150. The record on this appeal is not so strong as to value as on the previous appeal, where there was a finding that it was worth $375. This court held on that record that Kearney's recovery for the value of the land could not exceed $375. In the absence of a finding, we take that as the law of the case and give Kearney the benefit of it, although he may on this record be entitled to less. The state asks for a return of only $4,425. That disposes of a case already tried three times.

Rehearing denied.